SMITH, Lessee of HUGH McGARMENT, ISAAC TAYLOR and JANE, his Wife v. KING DOUGAL, RICHARD HAR-RINGTON, and MARY CROSS.

High Court of Errors and Appeals.   June 8, 1819.

*Ridgely's Notebook II, 397.*

The jury found a special verdict, as follows:

That Hugh McDermot (McGarment), one of the lessors of the plaintiff in this cause, and Robert McDermot, otherwise called Robert McGarment, were brothers born of the same parents in lawful wedlock. That they were both born in the Kingdom of Ireland now part of the United Kingdom of Great Britain and Ireland previous to the year 1776. That the said Robert McDermot was also called and known by the name of Robert McGarment. That previous to the year 1776 the said Robert left the Kingdom of Ireland and settled in Kent County in the State of Delaware, where he intermarried with (married) Mary Haslet. That he continued to reside in Kent County aforesaid in the state aforesaid from the time of his settlement there previous to the commencement of the American Revolution till his death which happened in the beginning of the year 1784. That he died seised and possessed of the lands and premises in controversy in this cause, and which now are, and at the time of the commencement of this suit were, in the possession of King Dougal, Richard Harrington, and Mary Cross. That he died intestate leaving no child or children, nor the

issue of any. That his wife, the aforesaid Mary, survived him, and continued in possession of the aforesaid lands and premises until her death which happened in the year 1799. That after the death of the said Mary, upon the application of Joseph Haslet, who was the half-brother of the said Mary, and of George Monro and Jemima, his wife, which Jemima was the half-sister of the said Mary, the legislature of the State of Delaware, on the February 3, 1802, passed a law entitled "An act to vest the title of two several parcels of land therein mentioned in Joseph Haslet and Jemima Monro," whereby it was enacted that all the estate, right, title, interest, property, claim, and demand, whatsoever, then vested in the State of Delaware of in and to the tenements and lots of ground therein mentioned, and every part and parcel thereof, be the same more or less, with the appurtenances should be and the same was thereby vested in the said Joseph Haslet and Jemima Monro, their heirs and assigns in fee simple, as tenants in common, and not as joint tenants subject nevertheless etc. (*prout* the said Act of Assembly). That the tenements and lots of ground mentioned in the said Act of Assembly are the same lands and premises in controversy in this cause, of which the said Robert McGarment died seised as aforesaid.

That on the April 9, 1802, the aforesaid Joseph Haslet and Mary his wife, and the said George Monro and Jemima his wife by their indenture of bargain and sale of that date duly acknowledged, did convey unto the aforesaid King Dougal one of the defendants in this cause, the several lots of ground therein mentioned and described (*prout* the said indenture) and which lots on part of the lands and premises in controversy in this cause, whereof the said Robert McGarment died seised and possessed as aforesaid, and that the said King Dougal claims title thereto by virtue of the said indenture. That on the April 23, 1803, the aforesaid Joseph Haslet, and the said George Monro and Jemima, his wife, by their indenture of bargain and sale duly acknowledged did convey unto the aforesaid Richard Harrington, another of the defendants in this cause, the lots of land therein mentioned and described (*prout* the said indenture) and which are part of the lands and premises in controversy in this cause, whereof the said Robert McGarment died seised and possessed as aforesaid, and that the said Richard Harrington claims title thereto by virtue of the said indenture. That the aforesaid Joseph Haslet by his certain writing obligatory commonly called an alienation bond bear-

ing date September 6, 1803, did covenant to convey to a certain John Wilds the lot of ground situate in the village of Lewis Cross Roads, and in the same alienation bond more particularly mentioned and described (*prout* the said alienation bond). That the said lot in the said alienation bond mentioned is part of the lands and premises in controversy in this cause whereof the said Robert McGarment died seised and possessed as aforesaid. That the said John Wilds claimed title to the said lot under the alienation bond aforesaid, and that the said Mary Cross one of the defendants in this cause holds the possession of the said lot by lease from the said John Wilds, and went into the possession thereof as his tenant.

That previous to the passing of the aforesaid Act of Assembly, nothing was ever done on the part or behalf of the State of Delaware towards claiming the said lands and tenements, nor was anything excepting that Act ever done on behalf of the said State respecting the lands and premises.

That Hugh McDermot, one of the lessors of the plaintiff in this cause, is the brother of the aforesaid Robert McGarment. That the same Robert never had but one brother, the said Hugh, and only one sister who is now dead, but whether leaving issue or not the jurors are ignorant. That from his birth to the present time the said Hugh McDermot has always been and now is a subject of the King of Great Britain. That the aforesaid Hugh McDermot was born in the said Kingdom of Ireland, to wit, at Knewell, in the Parish of Ballymoney in the County of Antrim, and from his birth hitherto has continued to reside, and now resides, in the United Kingdom of Great Britain and Ireland, excepting only that a short time after the decease of the aforesaid Robert McGarment, the said Hugh McDermot came to the State of Delaware seeking the property which fell to him by the decease of the said Robert and here continued for a few months. And that the said Hugh McDermot is a native born subject of the King of the United Kingdom of Great Britain and Ireland residing within his dominions. But whether upon the matter aforesaid, as aforesaid, etc. Judgment for the defendants. . . . [1]

---

[1] The report of this case is incomplete. *Ridgely's Notebook II, 400–401,* was left blank for an opinion which was never entered.